## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**ROBIN JEAN LYON CINI**,

         Debtor.

Case No.  **10-62715-13**

---

**ROBIN JEAN LYON CINI**,

         Plaintiff.

-vs-

**GENESIS ENTERPRISES, INC.**,

         Defendant.

Adv No.  **11-00056**

## MEMORANDUM OF DECISION

At Butte in said District this 14th day of December, 2011.

Trial of the above-captioned adversary proceeding was combined with hearings on Debtor's Objection to allowance of Proof of Claim No. 13 filed by Genesis Enterprises, Inc. ("Genesis"), and on Genesis' motion to dismiss[1] the Debtor's Chapter 13 case on the grounds that the Debtor is ineligible for Chapter 13 relief by exceeding the debt limitation of 11 U.S.C. § 109(e).  After review of the trial record, post-trial briefs and applicable law, for the reasons set forth below Debtor's Objection to Genesis' claim will be overruled and Genesis' motion to dismiss the case will be granted under § 109(e).  The Court will grant Debtor's request for 14

---

[1]Counsel for both parties agreed in open court to take up the motion to dismiss.

1

days to decide whether to convert the case to another chapter of the Code.

This Court has jurisdiction of the above-captioned case and adversary proceeding under 28 U.S.C. § 1334.  The pending matters are core proceedings under 28 U.S.C. § 157(b)(2).  This Memorandum of Decision includes the Court's findings of relevant fact and conclusion of law under F.R.B.P. 7052.

The combined hearing was held at Missoula on October 7, 2011.  The parties were represented by counsel.  Debtor Robin Jean Lyon Cini (hereinafter "Robin" or "Debtor") appeared and testified, represented by attorney James H. Cossitt ("Cossitt") of Kalispell.  Genesis was represented by attorney Jon R. Binney ("Binney") of Missoula, and Genesis' secretary Joe Clark ("Clark") testified.  Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, A, B, C, D, and E were admitted by stipulation of counsel. Counsel also stipulated that the Court could take judicial notice of the Stipulation between the Debtor and Genesis that Genesis' security interest is unperfected and its lien is avoided (Docket No. 34 in Case No. 10-62715-13), this Court's Order entered on February 23, 2011, approving the Stipulation (Dkt. 35), and Debtor's Amended Plan filed on August 1, 2011 (Dkt. 83).  At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, which have been filed and reviewed by the Court.  These matters are ready for decision.

## FACTS

Robin testified that she purchased several coffee shops located in Kalispell and Libby, Montana, from Genesis for the sum of $575,000.  She and her then-spouse Nigel Cini ("Nigel") signed a note and security agreement.  After their divorce, Robin filed her Chapter 13 petition on November 19, 2010.  She testified that she made some payments into escrow for the Genesis debt

until her attorney told her to stop making the payments in the Spring of 2011.

The approved Final Pretrial Order filed in this adversary proceeding (Dkt. 12) sets forth on pages 2-3 the following facts which are agreed upon and require no proof.

a.  Pursuant to FRBP 7008(a), this adversary proceeding arises in chapter 13 case of Robin Jean Lyon Cini, case #10-62715, now pending in the District of Montana, is a core proceeding under 28 U.S.C. 157(b)(2)(A), and consents to the entry of final orders or judgment by the bankruptcy judge.

b.  Robin is a natural person residing in Kalispell Montana, and is a debtor in possession pursuant to § 1304 of the Code.

c.  Genesis is a corporation with its principle place of business located in Flathead County, MT.

d.  Genesis is a "creditor" of Robin as defined in § 101 (10) of the Code.

e.  On 11/19/10, Robin filed a Chapter 13 petition. Case #10-62715, Dkt 001-0.

f.  The 90th day prior to the commencement of the case was 8/21/10.

g.  Robin made three $2,300.00 monetary transfers to Genesis within the 90-preferential period, which totaled $6,900.00.

h.  The three $2,300.00 transfers to Genesis were for, or on account of, an antecedent debt owed by the Debtor.

I.  Pursuant to § 547(f), Robin was presumed insolvent during the 90-day period prior to filing a bankruptcy.

j.  After Robin filed her Chapter 13 petition, she made two post-petition monetary transfers to Genesis in the amount of $4,600.00.

k.  The two post-petition transfers in the amount of $4,600.00 were made on, what subsequently was discovered, an unsecured debt.

l.  Neither the Court nor Title 11 authorizes the two post-petition transfers in the amount of $4,600.00.

m.      Genesis will return the two post-petition transfers in the amount of $4,600.00 to Trustee Robert G. Drummond.

n.      Robin and Genesis signed a Supplemental Agreement dated 12/5/05, which provided for attorney fees in the event litigation should arise in connection with the contract.

o.      Genesis filed proof of claim in Case # 10-61715, Claim #13-1.

p.      Robin filed an Objection to Claim #13-1 on 8/17/11. Case 10-62715, Dkt. 103-0.

q.      Genesis has not paid the bankruptcy estate any money[2].

In addition to the agreed facts, counsel for the parties stipulated at the conclusion of the combined hearing:  (1) that neither the Debtor nor the Chapter 13 Trustee made any demand upon Genesis for payment of transfers prior to the Debtor filing her complaint; and (2) that the Chapter 13 Trustee Robert G. Drummond would testify that, if Debtor's case were under Chapter 7, Genesis would receive a distribution of more than $6,900.

Additional detail and factual background are set forth below from the testimony and exhibits admitted at trial.

Nigel and Robin executed the promissory note dated December 5, 2005, in the principal amount of $500,000.  Ex. 3 includes the promissory note, security agreement[3], a "Supplemental Agreement for Sale and Purchase of Commercial Assets" ("Supplemental Agreement"), a bill of sale, a HUD Settlement Statement, and a UCC Financing Statement and amendment.  The note provides for interest only payments and a balloon payment of the entire remaining balance due by

_____

[2]This agreed fact is no longer true.  Genesis paid the estate $4,600 in post-petition payments made by the Debtor in satisfaction of Count II.  Dkt. 19.

[3]The security agreement was admitted separately as Ex. C.

4

December 5, 2008.  In the event of default the note provides that the holder may without notice declare the entire remaining balance immediately due and payable.  Robin testified that she never received notice of default or notice that the balance of the note had been accelerated from Genesis.

Robin admitted signing the security agreement in Ex. 3, and she testified that she understood that Genesis was secured.  Next in order in Ex. 3 is the Supplemental Agreement[4] dated December 5, 2005, and signed by Robin, Nigel, and by Joseph Clark and Brenda Clark on behalf of Genesis on the same day as the promissory note.  At page 6 of Ex. 3, paragraph 4 sets forth an allocation of the purchase price to equipment, buildings, name and goodwill, inventory and supplies, a noncompete agreement, and records and lists.  Robin testified that there were four buildings, and Ex. 3 allocates $225,000.00 of the purchase price to the buildings.  Clark testified that the buildings were structures for drive-through espresso stands.  Clark testified that only three buildings remain, and that they are "permanent" and hooked up to utilities.

The bill of sale in Ex. 3, dated December 5, 2005, describes the subject property as:

> All fixtures, inventory, equipment, supplies, portable structures, buildings, improvements, telephone numbers, advertising, accounts, supplier lists, good will, and the name "Juice-N-Java Junction" a Kalispell area business at each of the business' locations in Kalispell, Montana.

The Supplemental Agreement states at page 3, paragraph 12, that Buyer shall execute at closing a security agreement and standard UCC-1 covering the equipment, inventory, accounts and good will, which "shall be recorded with the Montana Secretary of State as a first mortgage against the sold assets."  Ex. 3/B.

---

[4]This also was admitted as Ex. B.

Ex. 2 is the UCC-1 Financing Statement recorded in the Clerk and Recorder's office of Flathead County, Montana, on December 12, 2005, covering collateral described in Item 4 as:

> All inventory, equipment, portable structures for the drive-through sale of espresso and juice, goodwill and the names "Juice-N-Java Junction of Nigel and Robin Cini, in their own name and/or under any legal entity d/b/a Juice-N-Java Junction", whether now owned or subsequently acquired, and proceeds of inventory, equipment, portable structures for the drive-through sale of espresso and juice, and goodwill.

There is no language on Ex. 2 providing that it is to be filed for record in the real property records, and Ex. 2 does not provide a description of any real property to which the collateral is related.

Clark testified that the title company filed the UCC-1 in the county, not the State. He testified that he never saw the UCC-1 until he learned that it had been filed in the wrong place. Clark asked his attorney about the mistake when he learned about it in January of 2011, and he testified that, as a result of the error in filing, Genesis' security interest was not perfected and its claim is unsecured.

Ex. A is a HUD-1 settlement statement dated 12/9/05[5], showing the $575,000 contract sales price, and reductions thereto.

On December 3, 2007, Robin and Nigel executed a promissory note amendment and renewal, Ex. 4/Ex. E, in the amount of $500,000. Ex. 4 moves the balloon payment date to December 5, 2011. Robin testified that the term of the original note expired and she asked to continue in the same fashion, and Genesis agreed to an extension. Later on direct examination Robin testified that she requested the renewal a year before the balloon payment came due.

---

[5]The settlement statement included in Ex. 3 is dated 12/5/05 and is filled out differently than Ex. A.

Ex. D is a statement from the escrow set up to administer Robin's payments to Genesis from 1/05/10 to 12/30/10, with a ending balance due stated in the sum of $495,666.15.  Clark testified that Robin's payments went into the escrow account, and from there were remitted to Genesis.

Robin and Nigel divorced, and Robin testified that the state court awarded real property of the marital estate to her.

Robin filed her voluntary Chapter 13 petition, Schedules and Statements on November 19, 2010.  Robin testified that she operated the coffee shop business as a corporation for awhile, but that when she filed her petition she was operating as a sole proprietorship.  She testified that she chose to file a Chapter 13 case because she wanted to pay her creditors.

Schedule A lists three parcels of real property identified as #1[6] and #2 at 202 Garland in Kalispell, and a "raw piece of land" in Columbia Falls.

Schedule B (Ex. 1) at item 29 lists as machinery, fixtures, equipment and supplies used in business equipment, inventory, 3 buildings, name and goodwill, cash in registers and float, records and lists, and a non compete agreement, together described as "Copper Mountain Coffee (D/B/A) Assets" valued individually and in the total amount of $495,000.00.  The 3 buildings are valued at $225,000.  Robin testified that she used the amount of the Genesis debt to arrive at the $495,000 value.  Clark testified that all of Genesis collateral were still in existence in December of 2010 except for one of the buildings, and that the assets should have appreciated in value.

On Schedule D Robin listed Genesis as a creditor with a secured claim marked as contingent, unliquidated and disputed, with an amount stated of $495,000, secured by collateral

---

[6]Schedule A states that Debtor has used #1 parcel at 202 Garland as a business office since February 2010.

described as "4 Coffee Bldgs, Espresso Equipment and Transfer of Leases." Robin testified that she had no reason not to believe the Genesis had a valid lien on the listed collateral. On cross examination Robin testified that the $495,000 debt listed for Genesis was "right around there."

Schedule G lists three unexpired leases which possibly are for Robin's coffee "stores" in Kalispell. Ex. 1 shows a total of secured claims on Schedule D of $677,244, and lists unsecured nonpriority claims from Schedule F in the total amount of $275,416.67.

Robin testified that for the first two months after she filed her Chapter 13 petition she paid Genesis directly, until her attorney told her to stop and make her payment to the Trustee. She testified that her attorney told her sometime after Christmas a problem existed with Genesis' lien.

Debtor filed her original Chapter 13 Plan on December 3, 2010. Ex. 5. The Plan provides for monthly payments in the sum of $706.00 for 60 months. No impaired secured claims are provided for under the Plan. Paragraph 2(c) treats Genesis as a secured creditor with an unimpaired secured claim, with no amount stated, and provides for monthly payments to Genesis in the amount of $2,300.00. Robin testified that her original Plan proposed to pay Genesis in full, and that she did not know at the time she filed her original Plan that Genesis might not have a valid lien. The liquidation analysis at paragraph 2(g) of the Plan provides for a distribution to unsecured claims of at least $42,316.98, and a separate and more detailed liquidation analysis showing the calculation is included in Ex. 5[7]. Robin testified that, when she

---

[7]The exhibit entitled "Liquidation Analysis" lists three parcels of real property – what appear to be two condominium units and a parcel in Kalispell. At the end of each of the three valuations is the phrase: "Estimation was based on similarly situated properties in the current housing market." This suggests that all three parcels of real property are residential, not commercial.

learned Genesis was unsecured, there was more value for distribution to unsecured creditors, including Genesis, in the form of what was Genesis' collateral, and that Genesis would get most of the value from its pro rata share.

The Chapter 13 Trustee and Genesis each filed objections to confirmation on January 26, 2011.  Genesis stated that it did not object if it is determined to be a secured creditor, but if its claim is unsecured Genesis objects based on the "best interest of creditors" test of 11 U.S.C. § 1325(a)(4).  Ex. 6.  Genesis also objects that the Plan fails the disposable income test of § 1325(b)(1) for the final 18 months of the Plan when her vehicle payments cease, and objects that Debtor is not eligible under the debt limits of § 109(e) if Genesis' claim is unsecured.  The Trustee objected to confirmation on the grounds the Plan is not feasible, the Plan does not meet the "best interest of creditors" test of § 1325(a)(4), and that Debtor is not eligible under § 109(e) if Genesis' lien is avoidable and its claim is unsecured.

On February 23, 2011, Debtor and Genesis filed a Stipulation (Dkt. 34 in Case No. 10-62715), signed by Cossitt for the Debtor and by attorney Edward Nolde for Genesis.  The body of the Stipulation reads in total:  "By counsel, the Debtor Robin Jean Lyon Cini and Creditors Genesis Enterprises, Inc. and Genesis Developments, LLC stipulate that Creditors' secured claim is not currently perfected."  The Court approved the Stipulation on February 23, 2011, by Order (Dkt. 35) which concludes that Genesis does "not have a perfected claim against any property listed on the Debtor's schedules and that any unperfected lien is hereby avoided[8]."  There has been no motion to reconsider or to amend that Order, and no relief from that Order has been

_____

[8]The Court utilized language which was submitted in a proposed order lodged by Debtor's attorney Cossitt, who filed the Stipulation.

9

granted.

Genesis filed Proof of Claim No. 13 (Ex. 7) on March 12, 2011, asserting an unsecured claim in the amount of $495,466.15.  Attached to Claim 13 is a copy of Ex. B – the Supplemental Agreement, and a copy of the escrow account (Ex. D) showing the amount due of $495,466.15. Clark signed Ex. 7, and he testified that the $495,466.15 amount on Claim 13 is what the Debtor owed Genesis on the date of the filing of her Chapter 13 petition.  The attachments to Claim 13 show payments by Robin from 12/31/09 through 12/30/10, with an ending balance of $495,466.15.  Clark testified that Genesis recorded receipt of the payments shown by Ex. D for its tax purposes.

Debtor filed her Objection to Genesis Claim 13 on August 17, 2011 (Dkt. 103/Ex. 8), asking that it be disallowed for lack of supporting documentation, for being overstated due to lack of acceleration, laches and waiver based on a course of performance of accepting payments for 2 years.  Robin testified that she never received notice that the note had been accelerated. Clark testified that, because of the automatic stay, he was told not to contact Robin and that is why Genesis did not send her a notice of default and demand for payment.

On August 1, 2011, Debtor filed her amended Plan (Dkt. 83).  The amended Plan omits Genesis from treatment among secured creditors in paragraph 2.  The Trustee and Genesis again filed objections to confirmation.  Both objections contend that the Debtor is not eligible for Chapter 13 relief because her unsecured claims total $684,398.11 which exceeds the limitation under § 109(e).

On August 25, 2011, Debtor commenced this adversary proceeding by filing a complaint against Genesis.  The complaint includes five Counts:  Count I (Avoidance of pre-petition

10

preference payments under 11 U.S.C. § 547); II (Avoidance of post-petition payments under 11 U.S.C. § 549); III (Claim for attorney fees as prevailing party under the Supplemental Agreement); IV (Disallowance of Genesis' claim under 11 U.S.C. § 502(d)); and V (Liability for transfer avoided under §§ 547 and 549)).  Genesis filed an answer denying liability under all five Counts.  Clark testified that he did not receive a demand for the return of payments received from Robin, but that after the adversary proceeding was filed Genesis repaid the Chapter 13 Trustee approximately $4,600.

Counsel stipulated at the hearing that the Chapter 13 Trustee Robert G. Drummond would testify that in a Chapter 7 liquidation Genesis would receive a distribution of more than $6,900.  Counsel also stipulated to entry of Judgment for Robin on Count II, and on October 7, 2011, a Judgment (Dkt. 19) was entered for Robin on Count II of her complaint in the sum of $4,600 which Genesis previously paid and was fully satisfied.  The Judgment specifies that it is not dispositive and has no preclusive effect with respect to Robin's claim for attorney fees under Count III.

## DISCUSSION

### I.  Objection to Claim.

Robin objects to Claim 13 on the grounds the promissory note and other required documents are not attached, the debt was never accelerated and thus was not fully due on the filing date.  She asks that Genesis' claim be disallowed and for her attorney fees under the Supplemental Agreement.

Montana Local Bankruptcy Rule 3001-2 ("Attachments to Proofs of Claim") requires that a proof of claim "shall include those documents required by F.R.B.P. 3001(c) and (d); and an

11

itemized summary ....."  Rule 3001(c) provides that when a claim is based on a writing, the original or a duplicate shall be filed with the proof of claim."  The promissory note is not included with Proof of Claim No. 13, and neither is an itemized statement.  Ex. B and D are attached.  The lack of the promissory note does not, however, mean that Genesis' claim must be disallowed as Debtor requests.

This Court discussed its longstanding rule governing allowance of claims *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount.  F.R.B.P. 3001(f).  The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
> > A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
> >
> > Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
> >
> > * * * *
>
> "If the objector produces sufficient evidence to negate one or more of the

12

sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth

Circuit *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Then in 2006 the BAP, in

*Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706-07 (9th Cir. BAP 2006),

discussed clarification provided by the United States Supreme Court decision *Raleigh v. Ill.*

*Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), regarding the "prima

facie evidence" language in Rule 3001(f):

The Supreme Court has clarified that the Rule 3001(f) "prima facie evidence" language does not address the burden of proof in an objection to claim proceeding. *Raleigh*, 530 U.S. at 22 n. 2, 120 S.Ct. 1951.

It follows that, after *Raleigh*, Rule 3001(f) cannot be construed as allocating the burden of proof and, instead, operates merely as an evidentiary presumption that is rebuttable.

The evidentiary presumption of a prima facie case operates to shift the burden of going forward but not the burden of proof. [*Garner v. Shier (In re Garner)*, 246 B.R. 617, 622 (9th Cir. BAP 2000)]; *Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir. 1999) (although the creditor bears the ultimate burden of persuasion,

13

the debtor must come forward with evidence to rebut the presumption of validity); 9 [COLLIER ON BANKRUPTCY ¶ 3007.01[1] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006)] ("once this burden of going forward to overcome the presumption is met, the ultimate burden is on the claimant").  Hence, at best, Litton's $33,435.46 proof of claim was entitled to the Rule 3001(f) evidentiary presumption, which is capable of being rebutted.

Assuming, without deciding, that the evidentiary presumption did apply, the mechanics of what it takes to rebut the Rule 3001(f) presumption are driven by the nature of the presumption as "prima facie" evidence of the claims validity and amount.  *Garner*, 245 B.R. at 621-22.  The proof of claim is more than "some" evidence; it is, unless rebutted, "prima facie" evidence.  *Id.*  One rebuts evidence with counter-evidence.  *Id.*

347 B.R. at 706-07.

In *Garvida* the objecting debtors satisfied their burden of going forward by proferring evidence at a hearing proving they made payments, and as a result the burden shifted to the creditor to prove the validity and amount of its claim, which it failed when it failed to provide an accounting.  347 B.R. at 702, 707.  In the instant case, Robin's Objection is that Genesis failed to include the promissory note with its Proof of Claim.  Since the note was not attached to Claim 13, the Court agrees the evidentiary presumption does not apply.  However, Genesis satisfied its ultimate burden of proving allowance of its claim at the hearing with evidence including Debtor's Ex. 3, which includes the promissory note, Clark's testimony, Debtor's Schedule D listing Genesis' claim in an amount fairly approximating the amount shown by Ex. D, and finally by Robin's testimony.

Genesis argues that the evidence at trial was undisputed that Genesis is owed a debt of $495,466.15 based on the testimony of Robin and Clark.  The Court agrees.  Robin admitted signing the promissory note, and no evidence exists in the record that the note was paid off or satisfied before she filed her Chapter 13 petition.  Ex. D states the balance due from the escrow

14

account as $495,466.15, which is the amount stated on Claim 13.

Robin's Objection contends that, because Genesis accepted regular payments until the petition date, that a course of dealing was established that prevents Genesis from asserting the full amount of the unpaid note as its claim. Debtor cite no case authority for this contention, and this Court rejects it as contrary to "certain bankruptcy fundamentals" described *In re Smith*, 435 B.R. 637 , 643 (9th Cir. BAP 2010):

> "The term 'debt' means liability on a claim. [11 U.S.C. § 101(12)]. "The term 'claim' means . . . right to payment, whether . . . such right is . . . [liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed . . .] secured, or unsecured . . . ." § 101(5)(A). "The term 'creditor' means . . . entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ." § 101(10)(A).

It is settled law that § 101(5)(A) adopts the "broadest possible definition" of claim. *In re Johnston*, 149 B.R. 158, 161 (9th Cir. BAP 1992); *In re Abijoe Realty Corp*., 943 F.2d 121, 125 (1st Cir. 1991). Under these broad definitions the Court finds that Genesis clearly is a creditor with a right to payment, and that the Debtor has a liability to Genesis on its claim in the full unpaid amount of the note as modified, regardless of whether it is disputed, liquidated, contingent, or matured. *Smith*, 435 B.R. at 643. It matters not that Genesis did not give notice to the Debtor or accelerate[9] the note prior to the petition date. The note, amendments, Debtor's Schedule D, and her testimony establish her liability to Genesis under the note beyond dispute.

**II. Eligibility – § 109(e).**

The Trustee and Genesis object to confirmation, and Genesis moves to dismiss, on the

---

[9]The issue of whether a debt was accelerated is significant in cases involving "cure by sale" and modification of rights of holders of claims secured by a debtor's principal residence under 11 U.S.C. § 1322(b). *See In re Murphy-Reyner*, 19 Mont. B.R. 141, 143-44 (D. Mont. 2001). The lack of acceleration has no significance in the instant case.

grounds Robin is not eligible for relief under 11 U.S.C. § 109(e) which provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400 may be a debtor under chapter 13 of this title.

Genesis contends that its claim is unsecured and its lien is avoided pursuant to the Stipulation and Order (Dkt. 34 and 35) entered in the main case. The Order specifically states that Genesis does "not have a perfected claim against any property listed on the Debtor's schedules and that any unperfected lien is hereby avoided." Under that Order Genesis's $495,466.15 claim is wholly unsecured and exceeds the § 109(e) eligibility limit. No motion to amend or for relief from that Order, which is binding on the parties, has been filed.

Robin contends that her eligibility under § 109(e) should be determined by her originally filed schedules, and the only time the Court should look beyond the schedules is when a creditor raises a claim of bad faith which Genesis has not, citing *In re Scovis*, 249 F.3d 975, 982 (9th Cir. 2001) and *Slack v. Wilshire Insurance Company*, 187 F.3d 1070, 1073 (9th Cir. 1999). In *Slack* the Ninth Circuit wrote:

> We are persuaded under this circuit's "readily determinable" standard, if the amount of the creditor's claim at the time of the filing the petition is ascertainable with certainty, a dispute regarding liability will not necessarily render a debt unliquidated. Whether the debt is subject to "ready determination will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor. *See,* [*Federal Deposit Ins. Corp. v. Wenberg (In re Wenberg)*, 94 B.R. 631, 634 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir. 1990)]. Therefore, the mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated for the purposes of calculating eligibility under § 109(e).

16

*Slack*, 187 F.3d at 1074.

Applying that standard in *Slack*, the Ninth Circuit found that the amount of debt at the time the petition was filed was readily ascertainable because the parties stipulated before state and bankruptcy courts that the creditor suffered damages which exceeded the maximum limit to the bankruptcy court's jurisdiction over a Chapter 13 petition.  187 F.3d at 1075.  "This stipulation established the precise amount of Wilshire's claim under the 'readily ascertainable' standard.  *See* [*Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1987)].  The fact that Slack contests his liability for these debts does not render the debt unliquidated"  *Id.* at 1075.  Likewise, Robin's Objection to Genesis' claim does not render her debt to Genesis unliquidated.  She testified that the amount of Genesis' claim which she listed on Schedule D was "right around there" what she owed Genesis.

The question of whether a debt is liquidated "turns on whether it is subject to 'ready determination and precision in computation of the amount due.'" *Slack*, 107 F.3d at 1073, quoting *Fostvedt*.  The definition turns on the distinction between a simple hearing to determine the amount of a certain debt and an extensive and contested evidentiary hearing at which substantial evidence may be necessary to establish amounts or liability.  *Slack*, 187 F.3d at 1073-74, citing *Wenberg*, 94 B.R. at 634.  "Therefore, the mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated for the purposes of calculating eligibility under § 109(e)."  *Slack*, 187 F.3d at 1074.

In 2001 the Ninth Circuit in *Scovis* quoted *Slack*:

[I]f the amount of the creditor's claim at the time of the filing of the petition is ascertainable with certainty, a dispute regarding liability will not necessarily render a debt unliquidated . . . .  Even if a debtor disputes the existence of liability,

17

> if the *amount* of the debt is calculable with certainty, then it is liquidated for the purposes of § 109(e) . . . . [A] debt is liquidated if the amount if readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided.

249 F.3d at 983-84.

The Ninth Circuit explained:

> Although we were defining the term "liquidated" and not "secured," we included in the eligibility determination readily ascertainable amounts, even through the debt had not been finally decided.  *See, id.*  This principle of certainty carries equal force in the present context, where the homestead exemption's effect on the status of Debtors' debt as secured or unsecured is readily ascertainable.  Debtors declared the $100,000 California homestead exemption on their originally filed schedules, and at the same time listed Henrichsen's lien as secured by the exempted residence.  Even though the lien was not judicially avoided until after the Chapter 13 petition was filed, the fact that Debtors listed both the homestead exemption and the lien on the schedules provides the bankruptcy court with a sufficient degree of certainty to regard the judgment lien as unsecured for eligibility purposes.  Thus, the Henrichsen debt should be treated as wholly unsecured on the petition date.

*Scovis*, 249 F.3d at 984.

The above quotation provides needed context for the portion of *Scovis* relied on by the Debtor when she quotes *Scovis* stating: "We now simply and explicitly state the rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were filed in good faith."  249 F.3d at 982.  Applying that standard, the Ninth Circuit concluded that the debtors in *Scovis* were not eligible under § 109(e) because their unsecured debt exceeded the statutory limit, notwithstanding that the unsecured debt listed on the schedules was only $40,499.83, by adding the judicially avoided lienholder's debt even though it was listed on the schedules as secured and not avoided until after the petition was filed.  *Id.*, 249 F.3d at 984,

985[10].

The *Scovis* excerpt quoted by Robin does not, as shown by the preceding quotation, require that this Court accept the statements in Debtor's Schedules as true.  Rather, it simply requires that the Court determine eligibility from the information provided in the Schedules.  The Ninth Circuit in *Scovis* found the debtors were ineligible under § 109(e) based on their Schedules when the Court found that $208,000 in debt listed as secured turned out to be unsecured because the lien was avoided post-petition.  249 F.3d at 984, 985.

Robin argues that she did not list the Genesis debt as unsecured in her Schedules but rather listed it as secured, and Genesis' claim was determined to be unsecured after the petition was filed.  She argues that she treated Genesis as secured until the stipulation, and contends the record is void of any evidence that it was readily ascertainable that the Genesis lien was not properly perfected in her originally filed Schedules.

The Genesis debt was listed on Schedule D as secured in the amount of $495,000, but based on the listing of the debt as disputed on Schedule D, the error in recording the UCC-1 and the approved stipulation (Dkt. 34), this Court finds it readily ascertainable that the Genesis debt was unsecured on the petition date.  *Scovis*, 249 F.3d at 984, 985.

*In re Smith,* 435 B.R. 637 (9th Cir. BAP 2010) the BAP recognized that *Scovis* is binding

---

[10]The Ninth Circuit reversed the BAP's decision in *Scovis* after concluding that the BAP relied on an incorrect legal interpretation of § 109(e) eligibility.  249 F.3d at 985.  The BAP went beyond the schedules to consider accrued interest, and used a figure for general unsecured debt that was half of the unsecured debt listed on the original schedules.  *Id.* at 982.  Even so, the BAP concluded that the total unsecured debt was $251,903.07, which exceeded the § 109(e) debt limit then in effect, and remanded to the bankruptcy court for findings regarding debtors' good faith if they were found eligible.  *Id.* at 980. The Ninth Circuit reversed the BAP and remanded to the bankruptcy court, but the Ninth Circuit also concluded that the sum of the unsecured debt it calculated ($254,199.83) exceeded of the § 109(e) limit in effect at the time.  *Id.* at 985.

19

precedent for deciding that under § 506(a), the claims of a second lienholder "are to be counted as unsecured claims as of the petition date for purposes of § 109(e) eligibility." *Smith,* 435 B.R. at 645.  Declining to apply *Scovis* mechanically, the BAP wrote:  "*Scovis*, however, was intended to ensure a straightforward and realistic application by incorporating into eligibility determinations the concept that a debt's 'status' could be as readily ascertainable as its 'amount,' no matter in which schedule the debt appeared." *Smith,* 435 B.R. at 646, citing *Scovis*, 249 F.3d at 984.  *Smith* recognized that the *Scovis* analysis applies to consensual liens, such as Genesis security interest in the instant case, and then discussed that the timing of lien avoidance does not matter.  *Smith,* 435 B.R. at 647-48.

In *Smith* the debtors contended that claims secured by second liens, for which the debtors had obtained a determination under § 506(a) that they were unsecured, were notwithstanding not irrevocably void until a discharge was entered and the liens were not eliminated under state law. 435 B.R. at 648.  The BAP responded:

> We do not dispute that the determination of property rights by the bankruptcy court ordinarily is controlled by state law.  *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).  However, we disagree that merely holding a security interest on the petition date means that the creditor is a secured creditor for purposes of the Bankruptcy Code generally, or § 109(e) specifically.
>
> * * * *
>
> [W]here a creditor cannot enforce its security interest in property of the estate, the creditor is precluded from "attaining secured status in the bankruptcy proceeding." [*United States v. Snyder*, 343 F.3d 1171, 1179 (9th Cir. 2003)], *quoting In re Taylor*, 289 B.R. 379, 383-84 (Bankr. N.D. Ind. 2003) ("[T]he fact that a creditor does not hold a lien upon property of the estate does not mean there is no underlying right to payment; only that the claim is not 'secured' in the bankruptcy sense of the word.").

*Smith*, 435 B.R. at 648.  In the instant case Genesis cannot enforce its security interest in property

of the estate, so under *Smith* its claim is unsecured.  Genesis's brief cites this Court's decision *In re Brown*, 2010 WL 4052941, *3 n.3 (Bankr. D. Mont), citing *Smith* and *Scovis*, that an unintended consequence of "strip off" is that changing a claim's status from secured to unsecured can have an impact on chapter 13 debtor eligibility under § 109(e).

The Court directed the parties to brief whether the 3 buildings are fixtures and whether the filing of the UCC-1 in Flathead County satisfied the requirements of Montana law for a fixture filing.  Robin argues that, notwithstanding their stipulation that Genesis' claim is unsecured, the evidence shows that Genesis held a secured interest in fixtures, consisting of the attached portable coffee houses, at a minimum, and it was not readily ascertainable that the lien could be avoided.  Robin cites Clark's testimony that the coffee buildings were affixed to the ground, and argues that the buildings had become so related to the property that in interest in fixtures arose therefrom and the UCC-1 statement filed in the County created a security interest in fixtures.

Genesis cited *Pacific Metal Company v. Northwestern Bank of Helena*, 205 Mont. 323, 667 P.2d 958, 960 (Mont. 1983) for the proposition that the intent of the parties controlled whether a building was real property secured by a fixture filing, and in that case the court held that buildings were personal property because the lease required removal of all structures upon termination of the lease.  *Pacific Metal* cited the definition of "fixture" at MONT. CODE ANN. § 70-15-103 that a fixture is a thing affixed to the land when it is

> (1) attached to it by roots, as in the case of trees, vines or shrubs;
> (2) imbedded in it, as in the case of walls;
> (3) permanently resting upon it, as in the case of buildings; or
> (4) permanently attached to what is thus permanent as by means of cement, plaster, nails, bolts or screws.

21

205 Mont. at 328, 667 P.2d at 961.

Genesis agrees with Robin that Ex. 2 satisfies the fixture filing as to the buildings it sold to Robin, but that she is ineligible notwithstanding because Schedule B allocates only $225,000 to the value of the buildings, and that Debtor's amended Plan lists the value of all her assets, including buildings, at $145,000. Even if this full amount was subtracted from the scheduled $495,000 claim, Genesis argues, its unsecured claim would still be $350,000, which together with the other $275,416.67 in unsecured claims on Ex. 1 exceeds the $360,475 limit of § 109(e).

The UCC definition for fixture is at MCA § 30-9A-102(oo): "Fixtures means goods that have become so related to particular real property that an interest in them arises under real property law." Under MCA § 30-9A-501(a), the office in which to file a financing statement to perfect a security interest is:

> (a) the office designated for the filing or recording of a mortgage on the real property if:
>
> * * * *
>
> > (ii) the financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures; or
>
> (b) the office of the secretary of state in all other cases, including if the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing.

"'Fixture filing' means the filing of a financing statement covering goods that are or are to become fixtures and satisfying the requirements of 30-9A-502(1) and (2) . . . ." § 30-9A-102(nn). Among these requirements, § 30-9A-502(2) requires that a financing statement that is to be filed as a fixture filing and covers goods that are or are to become fixtures must also:

> (b) indicate that it is to be filed for record in the real property records;

22

(c) provide a description of the real property to which the collateral is related
sufficient to give constructive notice of the mortgage under the law of this state if
the description were contained in the record of the mortgage of the real property;
and
(d) if the debtor does not have an interest of record in the real property, provide
the name of the record owner.

The evidence admitted at trial does not support a finding that the UCC-1, Ex. 2, satisfied

any of the above-listed three requirements to be sufficient as a fixture filing under § 30-9A-

502(2). Ex. 2 does not indicate that it is to be filed in the real property records. On the contrary,

the Supplemental Agreement provides at paragraph 12 that it is to be recorded with the Montana

Secretary of State. Ex. 2 does not provide any description of real property to which the buildings

could be fixed. No evidence exists in the record that the 3 buildings are located on real property

owned by Robin. Schedule G lists 3 possible lease locations for "stores" which may be Debtor's

business locations. And if the Debtor does not have a record interest in the real property where

the buildings are located, Ex. 2 does not list the record owner.

Clark testified that the 3 remaining buildings are permanent because they are hooked up

to utilities. The Court is not convinced that is enough to satisfy either statutory definition of

fixtures at § 70-15-103 or § 30-9A-102(oo). All of the security documents in Ex. 2 and 3

describe the buildings as "portable". No showing exists in the record that the buildings were

permanently affixed to any particular real estate, and Ex. 2 does not satisfy the requirements for a

fixture filing because it does not identify any particular real property to which the buildings are

affixed.

Furthermore, if the requirements for a fixture filing had been satisfied, in the Court's

view the approved stipulation between the parties should override. Genesis agreed that its lien

was not perfected or avoidable, and this Court's Order entered on February 23, 2011, avoided Genesis' unperfected lien.  Both sides were represented by counsel in drafting the stipulation. According to the testimony of Robin and Clark both sides' counsel advised them that Genesis' security interest was unperfected.

Robin argues that she "was surprised when Genesis stipulated to the unsecured treatment of its secured interest, and that "it papers [sic] that Genesis gave away a validly perfected security interest in the fixtures when it entered into the stipulation because it was perfected at the local level and did so with no attempt to litigate the validity of the lien in fixtures."  In the Ninth Circuit a person who has consulted with an attorney  "can be charged with constructive knowledge of the law's requirements."  *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987).  Both sides' attorneys are experienced bankruptcy counsel, and they knew or should have known the possible effect their stipulation had on the amount of Debtor's unsecured debt and eligibility.

The Court approved the stipulation by Order entered on February 23, 2011.  Dkt. 35.  No motion to reconsider or for relief from the Stipulation or Order has been filed , and no notice of appeal has been filed.  The Court sees no need to depart from the stipulation, and so enforces the stipulation in accordance with its terms which provide that Genesis does "not have a perfected claim against any property listed on Debtor's schedules and that any unperfected lien is hereby is avoided."  Dkt. 35.

Since Genesis retains a right to payment, and Debtor's objection to allowance of its claim has been overruled, Genesis' allowed claim of $495,466.15 is unsecured for purposes of § 109(e) eligibility under the Ninth Circuit cases *Slack* and *Scovis*, and the BAP's decision in *Smith*, 435

24

B.R. at 648.  The eligibility limit of § 109(e) is $360,475, and the Court therefore finds and concludes that Robin is ineligible for Chapter 13 and the case must be dismissed[11].

### III.  Count I – Preference – § 547.

Count I seeks avoidance of the $6,900 in pre-petition payments Genesis received from Robin.  Genesis argues that Robin voluntarily made the payments and did not demand their return prior to filing her complaint, and that Debtor lacks standing to avoid preferential transfers.

The Plaintiff has the burden of proving the avoidability of transfers under § 547(b).  11 U.S.C. § 547(g).  Section 547(b) authorizes the trustee to avoid "any transfer of an interest of the debtor in property", which the Ninth Circuit expanded upon as follows:

> The Bankruptcy Code permits a trustee to avoid any pre-bankruptcy transfer of a debtor's assets if the transfer: 1) is to or for the benefit of a creditor; 2) is for an antecedent debt owed by the debtor  before the transfer; 3) is made while the debtor was insolvent; 4) is made within 90 days of the bankruptcy filing; and 5) enables the creditor to receive more than such creditor would have if the debtor liquidated and distributed the estate to all creditors 11 U.S.C. § 547(b)(1-5).

*In re Food Catering & Housing, Inc.*, 971 F.2d 396, 397 (9th Cir. 1992).

Most if not all of the elements are shown by the agreed facts in the Pretrial Order, and stipulation of counsel.  Genesis contends that Robin as a chapter 13 debtor does not have standing to bring a preference action against Genesis beyond the debtor's powers under 11

---

[11]The result would not change if the buildings were found to be fixtures and their value removed from Genesis' unsecured claim.  According to Ex. 1, Schedule B, the buildings have a value of $225,000.  Deducting that from the $495,000 secured claim listed for Genesis on Schedule D leaves $270,000.  Adding to that the total for unsecured claims listed on the summary of Schedules on Ex. 1, $275,416.67, the resulting $545,416.67 still exceeds the $360,475 eligibility limit of § 109(e).  Further removing $70,000 in equipment as fixtures still would not change Robin's ineligibility.

U.S.C. § 522(h), citing *Jardine v. Bennett's Eastside Paint and Glass*, 120 B.R. 559, 562 (Bankr. D. Idaho 1990).  *See also In re Nielsen*, 197 B.R. 665, 672 (9th Cir. BAP 1996).  Genesis argues that the payments made by Robin were voluntary, and no demand was made for repayment prior to the adversary proceeding by the Debtor or the Chapter 13 Trustee.

Because the Chapter 13 case is dismissed for Robin's lack of eligibility under § 109(e), this Court need not decide either whether Robin has standing as a Chapter 13 debtor to bring a preference action, or whether she has satisfied her burden of proof under the elements of § 547(a).

The general rule is that dismissal of a bankruptcy case results in dismissal of pending adversary proceedings.  3 COLLIER ON BANKRUPTCY, ¶ 349.03[3] (16th ed. rev. 2010).  On the other hand a bankruptcy court is not automatically divested of jurisdiction over cases related to an underlying bankruptcy case that has been dismissed.  *Id.* at n. 20, citing *In re Carraher*, 971 F.2d 327 (9th Cir. 1992).  This Court has discretion whether to retain a related case after dismissal, after considering economy, convenience, fairness and comity.  *Carraher*, 971 F.2d at 328.  *Carraher* was cited *In re Valdez Fisheries Development Ass'n, Inc.,* 439 F.3d 545, 548 (9th Cir. Alaska 2006).

Case authority in this Circuit for retaining jurisdiction for "cause shown" under § 349(b) or in other specific situations.  *Id.*; *In re Davis*, 177 B.R. 907 (9th Cir. BAP 1995) (court could retain jurisdiction after dismissal over adversary proceeding to impose sanctions for relief from automatic stay), citing *Carraher.*  In the instant case, given Robin's ineligibility and dismissal of the Chapter 13 case, the Court sees no cause shown or other specific situations to depart from the general rule to dismiss this adversary proceeding.  Counts I, II, IV and V all are based on Code

26

sections to avoid transfers, recover payments and disallow a claim against the estate.  However, after dismissal an estate no longer exists to receive avoided transfers, and thus no reason exists to proceed to decision in this adversary proceeding.

In addition, since the main case is subject to dismissal, the adversary proceeding likewise will be dismissed since dismissal reinstates any transfer avoided under sections 542, 548, and 549, and vacates any judgment or transfer ordered under § 550.  11 U.S.C. § 349(b); *see also Davis*, 177 B.R. at 911.

Count II has been fully paid and satisfied.

**IV.  Count III – Attorney Fees.**

Genesis contends that Robin is not the prevailing party under the promissory note and agreements, and it repaid Robin's voluntary post-petition payment without demand and consented to judgment on Count II.  Robin contends that she was the prevailing party under the contract for negotiating the stipulation with Genesis avoiding its lien, in pursuing this adversary proceeding to recover transfers, in prosecuting her objection to Genesis' Proof of Claim, and relating to the Rule 2004 examination.

As explained above this adversary proceeding will be dismissed along with the Chapter 13 case based on Robin's lack of eligibility.  Robin is not the prevailing party in her Objection to Genesis' Proof of Claim, because her objection is overruled and Genesis' claim is allowed as it was filed.

Robin did not prevail in litigation against Genesis to avoid its lien, because Genesis

27

agreed by stipulation that its lien was subject to avoidance because it was not perfected[12].  The

stipulation was filed and approved by this Court more than 6 months before Robin commenced

this adversary proceeding.   Therefore, in several respects Genesis, not Robin, is the prevailing

party, and the attorney fee provision of the Supplemental Agreement would be read reciprocally.

Given the dismissal of the Chapter 13 case and this adversary proceeding, the Court declines to

award any fees and dismisses Robin's Count III.

### V.  Count IV.

Count IV seeks disallowance of Genesis claim under § 502(d) which provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow
> any claim of any entity from which property is recoverable under section 542,
> 543, 550 or 553 of this title or that is a transferee of a transfer avoidable under
> section 522(f), 522(h), 544, 545, 547, 548, 549, or 724 (a) of this title, unless such
> entity or transferee has paid the amount, or turned over any such property, for the
> which such entity or transferee is liable under section 522(I), 542, 543, 550, or
> 553 of this title.

Genesis argues that its claim should not be disallowed under § 502(d) because it promptly

and voluntarily paid the post-petition transfers to the Trustee and the Court entered judgment.

Since Count I is dismissed with the Chapter 13 case, no transfer is avoidable in this adversary

proceeding under § 547.  In addition Genesis turned over the post-petition payments to the

Chapter 13 Trustee under Count II, so under the plain language of § 502(d) the Court need not

disallow Genesis' claim.

### VI.  Count V – § 550(a)

---

[12]That result is mainly the result of the automatic stay under bankruptcy law which
prevented Genesis from curing the defective recording of the UCC-1, and not the result of
litigation based upon the sale agreements or Montana law.  Sections 502(d), 547, 549, 550 of the
Code, upon which Robin's claims for relief in this adversary proceeding are based, do not
provide for an award of attorney fees to the prevailing party.

Count V authorizes a trustee to recover, for the benefit of the estate, property transferred or the value of property to the extent a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a).   Count V is redundant and depends on success in Counts I and II.  As stated several times above, Genesis paid and fully satisfied the judgment entered in Count II, and Count I will be dismissed.  Count V likewise will be dismissed.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of the above-captioned case and adversary proceeding under 28 U.S.C. § 1334.

2.  Genesis' motion to dismiss, Debtor's Objection to Genesis' Proof of Claim, and Plaintiff's claims for avoidance, preference, and disallowance of Genesis' claim in this adversary proceeding are core proceedings under 28 U.S.C. § 157(b)(2).

3.  Genesis satisfied its ultimate burden of proving that it is a creditor with an allowed unsecured nonpriority claim in the amount of $495,466.15.

4.  The parties stipulated that Genesis' lien is unperfected, and the lien was avoided by Order of this Court.  The UCC-1 financing statement admitted into evidence does not satisfy the requirements for a fixture filing under Montana law, MCA § 30-9A-502(2).  The Court deems it appropriate to enforce the stipulation.

5.  Genesis satisfied its burden of proof by a preponderance of the evidence that the Debtor Robin Jean Lyon Cini is not eligible for chapter 13 relief under 11 U.S.C. § 109(e) because she owed on the date of the filing of the petition noncontingent, liquidated, unsecured debts exceeding $360,475.  Therefore Genesis' motion to dismiss the above-captioned Chapter 13 case will be granted.

6.   The Court sees insufficient reason, in the exercise of its discretion, and insufficient cause shown, to depart from the general rule of dismissing the pending adversary proceeding along with the related Chapter 13 case.  The Court will allow the Debtor 14 days to decide whether to convert the case to another chapter of the Code.

7.   The Chapter 13 Debtor lacks standing to bring a preference or other avoidance action without the Trustee, except under § 522(f) and § 522(h).

8.   The Debtor is not the prevailing party against Genesis under the promissory note and Supplemental Agreement in evidence based on the stipulation to avoid Genesis' unperfected lien, Debtor's objection to claim, or under the claims for relief averred in the complaint.

**IT IS ORDERED** that separate Orders shall be entered in conformity with the above:  (1) overruling Debtor's Objection to Genesis' Proof of Claim; (2) granting Genesis' motion to dismiss the Chapter 13 case under § 109(e) for lack of eligibility; and (3) dismissing the above-captioned adversary proceeding.  The Debtor will be allowed 14 days to file a motion to convert the case to another chapter.  If the Debtor converts the case to another chapter of the Bankruptcy Code, the Debtor also shall file within the same 14 days an amended complaint in Adversary Proceeding No. 11-00056, reflecting the change in status, and if the Debtor fails to file an amended complaint within 14 days the dismissal of the adversary proceeding will take effect without further Order.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

30